**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                     No. 97-4825

HARVEY P. STAPLES,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-97-48)

Submitted: July 14, 1998

Decided: August 6, 1998

Before WIDENER, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Theodore N. I. Tondrowski, Richmond, Virginia, for Appellant.
Helen F. Fahey, United States Attorney, John S. Davis, Assistant
United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Harvey P. Staples pled guilty to possession with intent to distribute crack cocaine,[1] and was sentenced to serve 120 months' imprisonment.[2] Having reserved the issue in his guilty plea, Staples appeals the district court's denial of his suppression motion, arguing that a forced warrantless entry by police into his motel room violated the Fourth Amendment and that evidence seized pursuant to a subsequent search warrant should have been suppressed. He further contends that the officers failed to comply with the "knock and announce" requirement. For the following reasons, we find that exigent circumstances justified the officers' actions and that the district court properly denied Staples's suppression motion. Accordingly, we affirm the district court's order and Staples's conviction and sentence.

Officers from the Richmond, Virginia Police Department received a tip from a reliable confidential informant that a sixty-year-old black male was selling drugs from Room 315 of the Days Inn on Midlothian Turnpike. When the investigating officers approached Room 315, Edward Covington, a black male meeting the physical description given by the informant, answered the door and gave the officers permission to enter the room. Upon entry, officers observed what appeared to be cocaine and drug paraphernalia in plain view. Covington was immediately arrested.

In an effort to cooperate with the officers, Covington consented to a search of his room. Pursuant to this consensual search, the officers seized cocaine, drug paraphernalia and packaging materials, cash, and a loaded .45 semi-automatic pistol. Covington admitted that the drugs and the gun belonged to him. Covington informed the officers that his

_____

1 **See** 18 U.S.C. § 2 (1994); 21 U.S.C. § 841 (1994).
2 On the Government's motion, the district court dismissed the remaining charges: conspiracy to possess with intent to distribute a controlled substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 846, and using and carrying a firearm during the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (1994).

supplier, Frizzelle Belton, was occupying Rooms 25 and 30 of the nearby Host Inn.

Covington agreed to participate in a controlled"buy" from Belton. While the officers made the arrangements, a maintenance man at the Days Inn phoned Covington, alerting him to police officers in the motel. Covington later tried to telephone Belton at the Host Inn. The clerk at the Host Inn relayed Covington's call to its maintenance man, who told Covington that he would try to locate Belton. Later, the clerk from the Host Inn called Covington to ask why he was trying to reach Belton. Covington responded that he wanted to buy additional drugs from Belton. Covington then explained to the officers that the clerk at the Host Inn, like other intermediaries, was paid for warning drug dealers of police presence in the area. Eventually, Covington and Belton agreed to meet at Covington's motel room for the drug transaction.

Additional officers were dispatched to the Host Inn to conduct surveillance of Rooms 25 and 30. During the two-hour surveillance, the officers observed a high volume of pedestrian traffic in and out of Room 30; Staples was seen frequently going in and out of both rooms. The officers observed Belton leaving the Host Inn and followed him to the Days Inn.

At some point during the transaction with Belton, Covington alerted the officers waiting in the next room. Upon hearing the prearranged signal, the officers entered Covington's room and arrested Belton. Pursuant to this arrest, the officers seized eight ounces of crack cocaine, $270 in cash, a pager, ammunition, and a loaded 9mm semi-automatic pistol from Belton's person.

The officers then quickly re-assembled for a raid on Rooms 25 and 30 at the Host Inn. The plan, upon the advice of an Assistant Commonwealth's Attorney, was to secure both rooms, but not to conduct a search until warrants had been obtained. The officers forcibly entered Room 30 first, yelling "Police. Search Warrant." When the officers similarly entered Room 25, they observed Staples cutting up a white powdery substance. Following Staples's arrest, and pursuant to the subsequent search warrant for Room 25, the officers recovered

3

four ounces of crack cocaine, cash, a pager, and a loaded handgun, with additional ammunition.

Staples moved to suppress this evidence, arguing that it was obtained in violation of the Fourth Amendment. At the conclusion of the suppression hearing, the district court denied Staples's motion, ruling that exigent circumstances--the possibility that evidence might be destroyed coupled with the threatened safety of the investigating officers--excused the warrantless entry. We agree. Absent clear error, we will not disturb a district court's factual findings made when ruling upon a motion to suppress.[3] We review de novo the ultimate suppression decision.[4]

One element governing the lawfulness of searches and seizures under the Fourth Amendment is that police officers must knock and announce their presence before entering a dwelling to be searched.[5] Generally, officers may only make a forcible entry into a dwelling to execute a search warrant if, after giving notice of their authority and purpose, they are refused entry or a significant amount of time has elapsed.[6] Failure to comply with the "knock and announce" rule may render a search illegal; however, unannounced entries are permissible when there are important countervailing law enforcement interests such as the safety of the officers or other exigent circumstances, such as the possibility that drugs or other evidence will be destroyed.[7]

Exigent circumstances exist when there is probable cause to believe that contraband is present and an officer reasonably believes that the evidence might be destroyed before he can return with a warrant.[8] We note that the existence of exigent circumstances must be deter-

_____

[3] **See United States v. Rusher**, 966 F.2d 868, 873 (4th Cir. 1992).
[4] **See id.**
[5] **See Wilson v. Arkansas**, 514 U.S. 927, 930 (1995).
[6] **See United States v. Kennedy**, 32 F.3d 876, 882 (4th Cir. 1994).
[7] **See id.**
[8] **See United States v. Grissett** , 925 F.2d 776, 778 (4th Cir. 1991) (noting that officers need not produce concrete proof that the occupants of the room were on the verge of destroying evidence to establish exigent circumstances).

mined as of the moment of the officers' warrantless entry into Staples's motel room and consider the following factors to ascertain the degree of exigency present:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.**9**

It is not necessary for us to consider whether any of the factors listed is sufficient, standing alone, to justify a warrantless entry. The exigency of the circumstances must be judged in light of all relevant factors.

Here, the officers were involved in a quickly evolving drug investigation. The record discloses that only approximately seven hours elapsed from when the officers received the tip from the confidential informant to Staples's arrest. Based on the ready destructibility of cocaine, the officers reasonably believed that the evidence could have been removed or destroyed if they did not act quickly. And since the two suspects already in custody--Covington and Belton--were armed when arrested, the very real possibility existed that the suspects at the Host Inn would also be armed and could respond to the officers' presence with deadly force, thereby endangering the safety of the investigating officers. Further, the two motels were not only close in proximity, but also shared a communications link to warn of police activity in the area. Presumably, those suspects at the Host Inn could have attempted to escape if they had been alerted to the police activity at the Days Inn or if they had become suspicious following Belton's failure to return from his drug transaction with Covington.

Weighing all of these considerations, we find that the exigency of the circumstances confronting the officers was sufficient to justify their warrantless entry into Staples's motel room without strictly com-

_____

**9 United States v. Reed**, 935 F.2d 641, 642 (4th Cir. 1991) (citing United States v. Turner, 650 F.2d 526, 528 (4th Cir. 1981)).

5

plying with the knock and announce rule. Accordingly, we affirm Staples's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED